Good morning. Good morning, Your Honors. Before we start the clock, you're appearing pro bono, is that correct? That is correct. All right, and while we appreciate everyone always coming for the court, I would like to express the appreciation of the court for those people that do give their time pro bono as it facilitates the discussion on the issues in matters where people don't have a lawyer and can't afford a lawyer. So thank you for that, and we'll begin with your time. Thank you, Your Honor. May it please the court, Travis Sextrom on behalf of the appellant, Samuel Scott Johnson. I would like to reserve two minutes for rebuttal. Now, the principal issue on appeal is whether the defendants violated Mr. Johnson's due process rights by deducting his wages without statutory authority. Now, the facts alleged demonstrate such a constitutional violation here. You see that prior to his hire, Mr. Johnson was specifically told that a portion of his wages would be deducted and credited against his restitution obligation. And as the district court noted, the forms that he signed prior to his hire did not indicate that there would be no restitution crediting. However, after over a year and a half of employment, Mr. Johnson was later told that, in fact, these deductions would not reduce his restitution obligation and would be treated as a lump sum donation. Well, let's get right to the issue on this. If Montana Code Section 53-301-132 does not place any substantive limitations on the Department of Corrections' exercise of discretion when it comes to wages paid to inmates that are not employed in a federally certified program, isn't it true that Mr. Johnson does not have a property interest in those wages? No, Your Honor. In fact, we see this rationale illustrated in State v. Love, which is the case that we think is the most relevant one here, because it addresses a statutory scheme that was analogous to Montana's at the time of the violation. We see that both statutes, both the Ohio and the Montana statute, neither one mandated compensation. They both stated that the DOC may pay an inmate. They also used analogous language to define the authorized deduction, stating that the DOC may deduct or may collect a set of enumerated payments. Isn't it true in State v. Love, which is a case that you obviously rely on, that the regulations there place some sort of substantive limitation on the exercise of official discretion, thus creating a property interest? Whereas here, if there isn't any substantive limitation, isn't that distinct from your case? No, Your Honor, and we would suggest that State v. Love places the same limitations as we see here. And this is what the Montana Supreme Court has recognized, and indeed the defendants have conceded in their original briefing before this Court. And I'm quoting from page 16 of their original response brief. They stated that the Montana statute, 5330-132, provides, quote, the allowable and permissible deductions from imprisoned inmates' wages. And we see that the Montana Supreme Court, in the materials that I provided to you on page 12, stated that the statute specifically addresses the allowable and permissible inmate wage deductions by the DOC. And this is what we see illustrated in the State v. Love case, that while there is some discretion, there are substantive limitations on the discretion of the DOC, and that they can only make those deductions when they are authorized by statute. And the deduction authorization here was for federally certified prison industry programs. This is how the Montana legislature decided to fund the victim's compensation program, and that was through deducting from inmates employed. But is this program, it's run like a certified, federally certified program, but is it one? No. It was not certified, was it? I think they had applied for certification, but it never was certified, was it? Your Honor, we see, no, it was never certified, and we see that they decided not to achieve certification in this case. So it was, indeed, never certified, and, therefore, they did not have the authority to make those deductions, because, once again, the grant was only for programs that had been federally certified by the Department of Justice. And, of course, throughout the two and a half years here, it was never, at any point, federally certified. Now, Your Honor, there is another important issue in this case, and that is the question as to whether or not these rights were, of course, clearly established at the time of the constitutional violations. And this Court has stated that the dispositive inquiry in determining whether or not a right is clearly established is whether or not the defendants had fair warning that their actions would create a constitutional violation. And this Court has also stated that, in following out that inquiry, that you do not require controlling authority from this Court, that it can be achieved through state, district court, and unpublished opinions, and the defendants do not contest this point. And we see that there are three types of cases prior to 2000 falling into those categories that indicated that the DOC could not deduct wages without statutory authority. And, also, the property interest here has arisen under a statute. As Judge Callahan noted, 5330-132 is really the controlling authority here, and that it did not grant authority for the statutory deductions here. And, as the Seventh Circuit has noted, defendants are not entitled to immunity when a property interest arises under a statute. That's in Judge Posner's opinion, and in Anderson v. Romero. All right. Is there anything in the text of the Constitution or in the case law that clearly establishes that the Department of Corrections could not deduct 15 percent of Johnson's wages for the CVCP, or that the deductions had to be credited towards a court-ordered restitution obligation? Your Honor, 5330-132, as we've been discussing, did not authorize that. And, of course, federal agencies are granted power through state statute, and thus they never had the power to make these deductions. And we believe that State Beloved illustrates that similar rationale. They could cause him to work for nothing, right? I'm sorry, Your Honor? They could have him work for nothing, right? Yes, Your Honor. That was within their power at the time, and they made the choice. So they could have him work for zero, right? Yes, Your Honor. So they decide instead there's an amount of money, X plus Y, and he's going to work for X and they're going to put Y into a fund. That's what they decide discretionarily. What's wrong with that? Your Honor, the issue is that they were not authorized to make that choice. They did not have that power as an agency. It says they had the power to cause him to work for X. They clearly had that discretion, right? They didn't have to give him X plus Y, correct? Can you rephrase your question, Your Honor? The question is they could have had him work for zero if they wanted, right? That's correct. So instead they have him work for X dollars, and they put Y dollars into a fund. Where's his squawk? Your Honor, if I hear you correctly, are you asking where's the harm in this case? Where's his property right in the Y dollars? His property right, once again, is that, as illustrated in State v. Love, that you have a property interest when you are given a payment. He's not given a payment. He's given X. They're telling him he'll pay you X dollars. They have discretion to only pay him X. That's their discretion. Yes, Your Honor. Also, they're not paying him Y. They're putting Y into a fund. Is your point that they can't take Y out of X unless there's a statutory basis for it? That is correct, Your Honor. I'm not taking Y out of X. I'm saying they're only paying him X, and they're putting Y into a fund, the total amount being X plus Y. What's wrong with that? Your Honor, the forms indicate that those payments do come out of his salary, and that was what was held by the Montana Supreme Court, that Y is actually being taken out of X in your hypothetical, and that was what was held to be at issue in State v. Love. It wasn't taken out of X in my hypothetical. I appreciate that, Your Honor. The two together equals Z. It may have been taken out of Z but not out of X. Your Honor, if in your hypothetical Y is not taken out of X, then that is not the issue that we have before this Court. What we have at issue before this Court is Y actually being taken out of X, and we suggest that in that scenario, Your Honor, that there is a property interest. Do you want to reserve for rebuttal?   Thank you. Good morning. Good morning. May it please the Court, my name is Colleen Ambrose. I'm a Special Assistant Attorney General for the State of Montana, and I represent the Department of Corrections, and one of my clients, Diana Cook, is with me.  Good morning. Good morning. I'm going to be arguing at the department council table today. You're going to be arguing, though, correct? Okay. I would like to respond to one of the questions that this panel put to Mr. Ekstrom. Did the Constitution – is there anything in the Constitution that says the department can't take these deductions? And there is nothing. I mean, this panel recognizes that there's nothing in the Constitution that has created a property interest in Mr. Johnson's prison wages. But once he's paid, and once there's an agreement, didn't he sign an agreement? Your Honor, he did sign a notice, an acknowledgment of the terms and conditions of employment, which did set out what deductions would be made from the prison wages at the time. And he acknowledged that his questions regarding those deductions, that he understood them and that all of his questions were answered. And wasn't he told that it would be a federally certified program? He was – he would have been told that they had applied for federal certification and that the program was going to be operated as if it were a federally certified program. But under the terms and conditions of his application and participation in that program, he actually knew what types of deductions were going to be taken from his wages. Go ahead. I'm sorry. Was he also told that restitution would be applied, that some of the amounts taken out would be applied to restitution? I don't know if he was told that or not. But I don't think that that inquiry is relevant to this particular case. Even if he had been told that his – the 15 percent deduction was going to be applied to the restitution, it doesn't create – that statement doesn't create a constitutionally protected property interest in the wages. Now, you would concede if the prison industries program that Mr. Johnson had been employed in was a federally certified program, then he would have had a property interest in the wages under Montana Code 53-30-13-2132, right? Yes, we would concede that, Your Honor, because it mandated that he receive a wage and a wage at whatever was prevailing in the locality where he was working. But – And that's what he was paid, wasn't he? That is what he was paid. But then his due process was not violated in that instance, Your Honor, because we followed the statutory requirements that said we would have followed the statutory requirements taking those deductions. So if it had been federally certified, he would have been wrong in taking the 15 percent, right? He would not have been wrong. No, you're right. If it had been federally certified, the statute provided that we may take those deductions. Okay. But it wasn't federally certified, so your position is? Our position is that he had no federally protected property interest in the wage. And even if he did, it didn't – by taking that amount of money didn't create the – I guess didn't violate his rights. That's correct, Your Honor, because we would have followed – he would have been given the procedural due process that he was entitled to because we followed the taking the deductions that were allowed under the statute. And I think that's an important point here. I mean, it really doesn't matter if the statute here, the Montana statute, did not create a property interest because it was a discretionary statute. Montana had the discretion whether or not to file – I mean, to pay wages to their inmates. They're not required to do that under the Constitution or under traditional common law. So this lawsuit comes under no good deed goes unpunished? Apparently. That's exactly what you're arguing essentially there. Because we did confer substantial benefit upon Mr. Johnson here by providing him with the opportunity to be employed in a training program, to be paid a generous wage. He was getting trained for rehabilitation and reintegration into the community. He voluntarily applied for this job because he knew he was going to be receiving a much higher wage than he would normally have earned in other non-certified prison industries. At most, we paid $2 per day for inmates. In this case, he would have been earning, even with the deductions, almost three times or over three times what prisoners would have earned. Let's take the $2 a day, people, okay? What you pay in general in your programs, let's say, is $2 a day. At that time, yes. Yeah, at that time. And what happened to that $2? Your Honor, no deductions were made from those. Okay, so they would get the $2. Now, assuming they then had their $2, I guess once they had it in hand, that would be a property interest, correct? Correct. If it was deposited into the inmate account or credited to their inmate account, yes. Okay. So the people are making the $2 a day. If you said to them, you know what, we're only going to pay $1.50 a day from now on and we're going to put 50 cents in this other fund, that would be okay, I take it, under Montana law? Yeah, under Montana law, the decision whether or not to pay a wage is entirely discretionary with the state of Montana, with the prison officials. That's the way the statute is set up. And there are no limitations on the types of deductions, or substantial limitations, on the types of deductions that would have been taken from that pay. But as a practical matter, they usually don't take any out, is that correct? Not when we're talking about a pay at 31 cents an hour. Not when we're discussing $2 per day. $2 a day. Correct. They just don't do it. Correct. But there's nothing in Montana that says they couldn't do it. That's correct. They'd be left with nothing. That's correct. That's probably why we do not. Your Honors, I would also want to stress that, or discuss Mr. Ekstrom's request that this Court rely upon the ruling in Iowa v. Love. In that, I would distinguish that case, because in that case, the Iowa statute actually gave prison officials the discretion to pay inmates' wages, if they so chose. And then if they paid, they may take certain deductions. So the Iowa State Supreme Court determined that there was a limited property interest in the prison wage because of the limitations that were placed in the statutory language. There were no similar limitations in the Montana statutory scheme. And as a consequence, there were no, one, there was no protected property interest, and two, no reason to apply procedural due process for that. Again, Mr. Johnson was not in a federally certified prison program, so he had no protected property interest in his prison wages, and therefore not entitled to any form of due process before any deductions were taken from his wages. A certain amount was deducted. None of it went to restitution. Then he was able to keep the remainder of it, I assume? Correct. There was approximately a dollar, in some sense, that would have been credited to his inmate account. So basically he earned less than the $2 a day inmates? No, a dollar per hour. Oh, per hour. Okay. So he was earning over $5 an hour. Correct. Correct. And even if we got to this point, I don't believe that there is any clearly established law in this circuit or anywhere else that would say that prison inmates have a constitutionally protected interest in their prison wages if the statute does not create a property interest. So I would ask that this Court affirm the district court's grant of summary judgment to the department officials and find that they are entitled to qualified immunity because there was no such protected property interest and they did not violate Mr. Johnson's constitutional rights. Thank you. Thanks. Thank you, Your Honors. Briefly on rebuttal, two points. First, returning to the question that I think really is at issue before this panel, and that is whether or not there were any limitations on the discretion of the DOC to make these deductions in this case, I would once again turn this Court's attention to the fact that the Montana Supreme Court opinion that is within the excerpts of record that is stated at two points, that 5330-132 was the only grant of authority for the DOC to make deductions, and therefore, their only grant of authority to deduct restitution payments lay with federally certified programs. As the Montana Supreme Court noted, the Victim's Compensation Program, which is what the deductions were taken, as Ms. Ambrose just mentioned, was selected to be funded from federally certified programs. It was not meant to obtain funding from non-federally certified programs. And since this program was not federally certified, at any point, there was no grant of authority for them to fund that program from the wages of non-federally certified inmates. Well, you're basically arguing that it was clearly established that they couldn't do what they did, but let's just say, you know, it's not, you know, if it's not clearly established, then you lose, right? Your Honor, insofar as, let me answer your question in two parts. Yes, we would lose insofar as Mr. Johnson would not be entitled to obtain a reimbursement of his wages if this panel determined that there was qualified immunity. But the qualified immunity analysis is a two-part test. And the first part of that test is determining whether or not there was a constitutional violation. And this is an important step in this analysis because if there was a grant of qualified immunity, in every case, the law would never develop.  And the government would lose. That's why we don't, we're not supposed to jump over the first prong of saucier. Yes, Your Honor. But that's up for grabs right now. Excuse me, Your Honor? But that question's up for grabs right now. Well, the Supreme Court. The Supreme Court's really considering it. Oh, yes, Your Honor. And I see that my time is up. Thank you for your argument. Thank you very much. Unless anyone in the panel has any further questions, that will conclude argument in this case. Thank you both for your helpful argument. And, again, the Court thanks you for your pro bono work. This matter will stand submitted.
judges: Fernandez, Callahan, Gonzalez